## CITY OF BRIDGEPORT ET AL. *v.* PLAN AND ZONING COMMISSION OF THE TOWN OF FAIRFIELD (SC 17472)

Sullivan, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.

---

Argued December 5, 2005—officially released February 21, 2006

*Linda L. Morkan,* with whom were *Brian R. Smith* and, on the brief, *Gregory W. McCracken* and *Mark T. Anastasi,* for the appellants (plaintiffs).

*Richard H. Saxl,* for the appellee (defendant).

SULLIVAN, C. J. The plaintiffs, the city of Bridgeport (city) and the city's board of park commissioners, appeal[1] from the judgment of the trial court dismissing their appeal from the decision of the defendant, the plan and zoning commission of the town of Fairfield, granting the defendant's own application to change the zoning designation of certain property owned by the city in the town of Fairfield (town). The plaintiffs claim, inter alia, that the defendant lacked jurisdiction over the matter because it failed to comply with the provisions of General Statutes § 8-3 (a),[2] which require all applicants for a zone change to file with the town clerk a description of the boundaries of the affected zoning district at least ten days before the public hearing on the proposed change. We agree. Accordingly, we reverse the judgment of the trial court.

The record reveals the following facts and procedural history. The city owns a 320 acre parcel of property located in the town (property), which is commonly known as the Fairchild Wheeler Golf Course. In Decem-

[1] The Appellate Court granted the plaintiffs' petition for certification to appeal from the judgment of the trial court pursuant to General Statutes §§ 8-8 and 8-9, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 8-3 (a) provides: "Such zoning commission shall provide for the manner in which regulations under section 8-2 or 8-2j and the boundaries of zoning districts shall be respectively established or changed. No such regulation or boundary shall become effective or be established or changed until after a public hearing in relation thereto, held by a majority of the members of the zoning commission or a committee thereof appointed for that purpose consisting of at least five members. Such hearing shall be held in accordance with the provisions of section 8-7d. A copy of such proposed regulation or boundary shall be filed in the office of the town, city or borough clerk, as the case may be, in such municipality, but, in the case of a district, in the offices of both the district clerk and the town clerk of the town in which such district is located, for public inspection at least ten days before such hearing, and may be published in full in such paper. The commission may require a filing fee to be deposited with the commission to defray the cost of publication of the notice required for a hearing."

ber, 2002, the defendant filed with the town clerk an application seeking to change the zoning designation of the property from R-2 and R-3 residence districts to an AAA residence district. The R-2 residence zone requires a minimum lot size of 14,000 square feet; the R-3 residence zone requires a minimum lot size of 20,000 square feet; and the AAA residence zone requires a minimum lot size of 87,120 square feet.

The defendant notified the plaintiffs of the rezoning application by letter on December 18, 2002. On January 16, 2003, the defendant filed in the town clerk's office a notice of the proposed change and of a public hearing to be held on January 28, 2003. The notice stated in relevant part: *"Park Avenue/Easton Turnpike* Application of the [defendant] to amend the Zoning Map and Zoning Districts by the establishment of a AAA Zone on land presently zoned R-3 and R-2. This property is approximately 320 acres in size and is known as Fairchild Wheeler Golf Course and is shown as parcel [no.] 1 on Tax Assessor's Map [no.] 24 and parcel [no.] 2 on the Tax Assessor['s] Map [no.] 11." (Emphasis in original.) The defendant also published notices of the proposed change and the public hearing in the Fairfield Citizen-News on January 17 and January 24, 2003.

At the January 28, 2003 hearing, counsel for the plaintiffs made a request to continue the hearing. The plaintiffs also presented a protest petition pursuant to § 8-3 (b). Kevin Gumpper, the defendant's chairman, indicated that the defendant would hear the presentation by Joseph Devonshuk, Jr., the defendant's director, and would allow the plaintiffs to present a rebuttal at a later date. The hearing was continued to March 4, 2003, and counsel for the plaintiffs presented arguments against the proposed zone change at that time. The plaintiffs also presented testimony by Peter A. Vimini, a real estate appraiser, that the zone change would "adversely affect the subject property [to a] substantial degree"

and would reduce the number of buildable lots on the property from 522 to 165, a reduction of 68 percent. Vimini also testified that the average sale price of land in an R-3 residence zone from January, 1999, through June, 2002, was $407,044 per acre, while the average sale price of land in an AAA residence zone was $154,201 per acre.[3] On March 25, 2003, the defendant voted to approve the application for a zone change. It issued its decision and notified the plaintiffs on March 28, 2003.

Thereafter, the plaintiffs appealed to the trial court from the defendant's decision. The plaintiffs alleged that the zone change was illegal because, inter alia, it violated the town's comprehensive development plan, was intended to reduce the fair market value of the property,[4] constituted spot zoning, and violated the takings and equal protection clauses of the United States constitution. The plaintiffs also alleged that the defendant had failed to comply with § 8-3 (a). On May 27, 2003, the court issued a scheduling order indicating that trial of the case would commence on July 16, 2004. On March 30, 2004, the trial court ordered that a pretrial hearing would be held on June 15, 2004. Thereafter, the plaintiffs filed a motion seeking permission to file a reply brief to address new issues raised in the defendant's trial brief.

On April 15, 2004, the trial court notified the parties by telephone that the trial would commence on April 22, 2004. The plaintiffs filed a motion for continuance claiming that their trial counsel would not be available on that date, the pretrial conference had not been held and the court had not yet ruled on their motion for

---

[3] Thus, the projected sale price for the 320 acre property before the proposed zone change would be $130,254,080, while the sale price after the zone change would be $49,344,320, a difference of $80,909,760, and a reduction of approximately 62 percent.

[4] The plaintiffs allege on appeal that the purpose of the zone change was to allow the town to buy the property at a reduced price.

permission to file a reply brief. The trial court canceled the pretrial conference, denied the motion for continuance and held the trial on April 22, 2004. During the trial, the plaintiffs renewed their request, originally made in their trial brief, for an evidentiary hearing on their takings claim in the event that the court rejected their other claims. The court denied the request.

On April 28, 2004, the trial court issued its decision dismissing the plaintiffs' appeal. With respect to the plaintiffs' claim that the defendant had violated § 8-3 (a) by failing to file in the town clerk's office a notice containing a description of the boundaries of the affected property, the court concluded that the plaintiffs had waived the claim by failing to raise it before the defendant. The court further concluded that, even if the claim had not been waived, the notice filed by the defendant complied with the statutory requirements because it "gave all affected parties notice of the precise location and boundaries of the [property] by referring to maps on file in the Tax Assessor's Office." With respect to the claim that the zoning change violated the town's comprehensive development plan, the court found that "the uses permitted on the [property, for] recreational and residential use, remain the same under the zone change and are attuned to the surrounding area." Because the evidence before the defendant established that the defendant's application "would not change or prohibit any currently permitted use of the [property] but rather would only increase the minimum lot size permitted," the proposed change was in accordance with the comprehensive plan. With respect to the plaintiffs' claim that the zone change constituted a constitutional taking, the court concluded that the change prevented public harm by minimizing the reduction of open space and, therefore, was "not so unreasonable and confiscatory that [it] constitutes a taking of the [property]."

Thereafter, the Appellate Court granted the plaintiffs' petition for certification for review pursuant to General Statutes §§ 8-8 and 8-9 and this appeal followed. The plaintiffs claim on appeal that the trial court improperly: (1) denied the plaintiffs' motion for a continuance after accelerating the date of the trial; (2) concluded that the plaintiffs had waived any claim that the defendant violated § 8-3 (a) when it failed to file a description of the property affected by the proposed zone change with the town clerk; (3) concluded that the defendant had complied with § 8-3 (a); (4) failed to conduct an evidentiary hearing on the plaintiffs' claim that the zone change constituted an uncompensated taking of their property; (5) determined that the zone change was not an uncompensated taking; and (6) concluded that the zone change was consistent with the town's plan of development. We agree with the plaintiffs' second and third claims that the trial court improperly determined that the defendant had jurisdiction over the matter because the plaintiffs had waived their claim that the defendant violated § 8-3 (a) and that, even if the claim had not been waived, the defendant had complied with the statutory requirements. Accordingly, we reverse the judgment of the trial court. Thus, we need not reach the plaintiffs' remaining claims.

We first address the plaintiffs' claim that the trial court improperly determined that they had waived their claim that the defendant failed to comply with § 8-3 (a) by failing to raise it before the defendant. "A determination regarding . . . subject matter jurisdiction is a question of law . . . [and, therefore] our review is plenary." (Internal quotation marks omitted.) *Sweeney* v. *Sweeney*, 271 Conn. 193, 207, 856 A.2d 997 (2004).

This court previously has held that "[c]ompliance with the statutory procedure [of § 8-3 (a) is] a prerequisite to any valid and effective change in zonal boundaries." *State ex rel. Capurso* v. *Flis*, 144 Conn. 473, 481,

133 A.2d 901 (1957). A notice that does not comply with the requirements of § 8-3 (a) deprives the zoning commission of jurisdiction and invalidates any zoning regulations subsequently adopted. *Scovil* v. *Planning & Zoning Commission*, 155 Conn. 12, 14–15, 230 A.2d 31 (1967); see also *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 374, 378, 610 A.2d 617 (1992) ("strict compliance with § 8-3 (a) [is] a prerequisite to the [planning and zoning commission's] exercise of its power to amend the town zoning regulations"). "The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage [of] the proceedings." (Internal quotation marks omitted.) *Lewis* v. *Planning & Zoning Commission*, 275 Conn. 383, 390, 880 A.2d 865 (2005). Accordingly, we agree with the plaintiffs that the trial court improperly concluded that the plaintiffs had waived their claim that the defendant failed to comply with the notice requirements of § 8-3 (a).

We next address the plaintiffs' claim that the trial court improperly determined that the defendant complied with the notice requirements of § 8-3 (a). Whether the notice filed by the defendant complied with the statutory requirements is a mixed question of fact and law.[5] There is no dispute over the facts found by the trial court in the present case. Rather, the dispute arises from the trial court's application of § 8-3 (a) to those facts. Accordingly, our review is plenary. See *Carr* v. *Planning & Zoning Commission*, 273 Conn. 573, 588, 872 A.2d 385 (2005).

---

[5] But see *Olsen* v. *Planning & Zoning Commission*, 54 Conn. App. 440, 442, 735 A.2d 869 (1999) (whether description of boundary change complies with § 8-3 [a] is factual determination subject to clearly erroneous standard of review).

Section 8-3 (a) provides in relevant part: "A copy of such proposed . . . boundary shall be filed in the office of the town . . . clerk . . . for public inspection at least ten days before [the hearing on the proposed zone change] . . . ." We previously have recognized that "[t]he purpose of [the procedural requirements of § 8-3 (a)] is fairly and sufficiently to apprise those who may be affected by the proposed action of the nature and character of the proposed action so as to enable them to prepare intelligently for the hearing." (Internal quotation marks omitted.) *Kleinsmith* v. *Planning & Zoning Commission*, 157 Conn. 303, 310, 254 A.2d 486 (1968). "That [the] plaintiffs may have been sufficiently apprised of the contemplated change despite the fact that [the notice was defective] is of little import since [t]he underlying purpose of such requirements is not to permit changes, exceptions or relaxations [in zoning matters] except after such full notice as shall enable all those interested to know what is projected and to have opportunity to protest, and as shall insure fair presentation and consideration of all aspects of the proposed modification. This is not a technical requirement difficult of performance by the unwary. It is dictated by common sense for protection of an established neighborhood to be subject to change only after fair notice." (Internal quotation marks omitted.) *Timber Trails Corp.* v. *Planning & Zoning Commission*, supra, 222 Conn. 378–79.

This court previously has not considered the question of what constitutes a sufficient description of a proposed boundary change for purposes of § 8-3 (a). The Appellate Court, however, has addressed that question on a number of occasions. In *Bombero* v. *Planning & Zoning Commission*, 17 Conn. App. 150, 151, 550 A.2d 1098 (1988), the defendant planning and zoning commission approved a zone change and a special exception permit requested by the defendant Baker-Firestone, Inc.

(Baker-Firestone). The parties agreed that neither a map nor any other boundary description had been filed with the town clerk prior to the public hearing on the proposed changes. Id., 154. Instead, Baker-Firestone had filed a notice giving the address and the approximate acreage for the property involved and stating that maps of the property were on file in the town planning and zoning office.[6] Id., 155. The Appellate Court concluded that such notice did not comply with the requirements of § 8-3 (a) and, therefore, that the defendant planning and zoning commission lacked jurisdiction to act on the zone change application. Id.

In *Lauver* v. *Planning & Zoning Commission*, 60 Conn. App. 504, 506, 760 A.2d 513 (2000), the defendant landowner applied for a permit to excavate sand and gravel from a portion of a property that he owned. The property was located partly in the town of Scotland and partly in the town of Canterbury. Id. The defendant landowner's application stated that the excavation site was located in Scotland. Id. The defendant planning and zoning commission of the town of Canterbury (commission) indicated at a preliminary meeting to review the application that " 'a better description of the land involved and map and lot numbers should be added to the application,' " but scheduled a public hearing on the application for May 9, 1996. Id., 506–507. The application was not on the agenda at that meeting. Id., 507.

---

[6] "The pertinent portion of the published notice stated:

"ZONE CHANGE/SPECIAL EXCEPTION PERMIT

"645 Main Street [CT. RTE. 25]

"Petition of Baker-Firestone, Inc., for a change of zone from DB-1 (Design Business Dist. 1), RC (Residential & Farming Dist. C) and RD (Residential and Farming Dist. D) to DR (Design Residence District) for property at 645 Main Street comprising 100 acres, more or less. Also, a special exception permit to construct 246 condominium residential dwelling units.

"For more detailed information related to the application, reference should be made to the files of the Planning and Zoning Commission." (Internal quotation marks omitted.) *Bombero* v. *Planning & Zoning Commission*, supra, 17 Conn. App. 155 n.8.

On May 7, 1996, the defendant landowner filed an amended application, which apparently contained a proper description of the property. Id. The defendant commission then published notices on May 31 and June 11, 1996, of a public hearing on the amended application to be held on June 13, 1996. Id. "The commission continued the June 13 hearing to June 27 and July 9, 1996, and approved the amended application on August 8, 1996. The plaintiff [apparently an abutting landowner] appealed to the Superior Court." Id.

The trial court sustained the appeal. Id. It determined that the amended application required its own notice and that the published notice did not comply with § 8-3 (a) because it had been published less than two days before the June 13, 1996 public hearing. Id., 507–508. The defendant landowner then appealed to the Appellate Court, which affirmed the judgment of the trial court. Id., 511. The Appellate Court rejected the defendant landowner's argument that notice for the May 9, 1996 hearing complied with § 8-3 (a) and, because it related to the same application as the June 13, 1996 hearing, a separate notice for the June 13 hearing was not required. Id. Specifically, it rejected "the argument that the notice was sufficient because the public knew about the application and could have gone to the commission's office to look at the map of the subject property. [W]e are unpersuaded by the defendant's argument that the general public should have cross-referenced the application [with records maintained by another agency]. The statute does not . . . ask that the general public employ the skills of a research librarian to determine where the subject property is located. The act of giving statutory notice is much too important to be done by way of informal, unofficial or chancy cross-referencing." (Internal quotation marks omitted.) Id.; see also State ex rel. Capurso v. Flis, supra, 144 Conn. 479–81 (failure of plan and zoning commission to file

map of proposed zone changes rendered invalid commission's attempt to change zoning of plaintiffs' property).

In the present case, the trial court concluded that the notice filed by the defendant complied with § 8-3 (a) because it "gave all affected parties notice of the precise location and boundaries of the [property] by referring to maps on file in the Tax Assessor's Office." We are persuaded, however, by the reasoning of the Appellate Court in *Lauver* v. *Planning & Zoning Commission*, supra, 60 Conn. App. 511, and *Bombero* v. *Planning & Zoning Commission*, supra, 17 Conn. App. 154–55, that mere reference to a map on file in the offices of a separate agency does not constitute adequate notice of the boundaries of a property affected by a proposed zone change. As the Appellate Court stated in *Lauver*, "[t]he statute does not . . . ask that the general public employ the skills of a research librarian to determine where the subject property is located." *Lauver* v. *Planning & Zoning Commission*, supra, 511. Nor was the defendant's inclusion of the address of the property and its approximate acreage in the notice sufficient to comply with the statutory requirement. See *Bombero* v. *Planning & Zoning Commission*, supra, 155. As we have indicated, the purpose of the notice requirement is to provide *all* interested parties with *full* notice of *all* aspects of the proposed modification. See *Timber Trails Corp.* v. *Planning & Zoning Commission*, supra, 222 Conn. 378–79. It would be purely speculative to conclude that all interested parties were sufficiently aware of the contours of the city's property that the general description provided by the defendant in the present case constituted sufficient notice. Accordingly, we conclude that the trial court improperly determined that the notice filed by the defendant complied with § 8-3 (a).

The defendant attempts to distinguish *Bombero*, however, on the ground that, "this is not a case [like *Bombero*] where the public notice merely stated an address and an approximate acreage involved and then provided that '[f]or more detailed information related to the application, reference should be made to the files of the Planning and Zoning Commission.' *Bombero* v. [*Planning & Zoning Commission*, supra, 17 Conn. App. 155 n.8]." Rather, the defendant argues, the notice in the present case "clearly designated the exact tax map parcels to be rezoned." We are not persuaded. Both *Lauver* and *Bombero* clearly indicate that the boundary description of the affected property must be on file in the town clerk's office. See *Lauver* v. *Planning & Zoning Commission*, supra, 60 Conn. App. 511; *Bombero* v. *Planning & Zoning Commission*, supra, 154–55. Neither case suggests that, although inclusion in the notice of a general reference to the files of another agency is insufficient, a reference to a *specific* map in a separate office would meet the notice requirements, and we decline to adopt such a qualification here. The plain language of § 8-3 (a) requires that the boundary be filed "in the office of the town . . . clerk . . . for public inspection . . . ." Compliance with this bright line rule presents no undue difficulty and we can perceive no reason to import uncertainty into the statute by prohibiting references to boundaries filed with other agencies unless such references reach some indeterminate level of specificity.

The defendant also argues that a legal description of the boundary of the property, which covered over one and one-half pages of mostly single-spaced print, would have been "far more confusing and less informative, and would have involved far more 'library research' to determine the precise location of the property to be rezoned, than the simple designation of the two tax map parcels affected by the proposed change of zone

. . . ." Again, we are not persuaded. Section 8-3 (a) places the burden on an applicant for a zone change to file a "copy of such proposed . . . boundary" in the office of the town clerk. The fact that the legal description of the boundary may be confusing to laypersons does not relieve the applicant of that burden. Nor does it mean that a less confusing, but also less informative, general description of the property is sufficient. Our review of the record in the present case reveals that the boundary of the plaintiffs' property was clearly delineated on a one page map entitled "Proposed Zone Change for Fairchild Wheeler Golf Course—Fairfield Town Plan and Zoning Commission—December 2002." If the defendant believed that the legal property description was unduly confusing, there was nothing to prevent it from filing a copy of that map with the town clerk.

The judgment of the trial court is reversed and the case is remanded to that court with direction to sustain the plaintiffs' appeal.

In this opinion the other justices concurred.